Mr. Siegel, are you ready? Good morning. May it please the Court. I'm Scott Siegel, and I represent the appellants in this matter. The standard of review on the motion to dismiss is de novo. The standard of review on the denial of the motion to amend is abuse of discretion. Lawyers and judges for many years have had a zealous belief in seeking the truth. The Supreme Court of Appeals of West Virginia in Kessel v. Levitt made it clear that fraud would not be tolerated. In fact, as far back as 1902, our Court held that fraud is the concealment of the truth just as much as it is the utterance of a falsehood. In making a claim under Kessel v. Levitt for fraudulent concealment, that does not mutate the case to a wrongful death case because the remedy sought is wrongful death and because the legal right which was denied through the fraudulent concealment was the wrongful death remedy. And these families were entitled to that remedy and but for the fraudulent concealment which occurred of how this terrible explosion happened. Mr. Siegel, accepting your statement that this is a fraudulent concealment claim, could you walk us through why you don't have a statute of limitations problem on the fraudulent concealment? Yes, I'd be happy to, Judge Keenan. There are three key reasons that I think are very important. First, as the Court, I'm sure, is aware, Judge Keeley ruled that the very latest we could have brought this was in 2008. Well, I think, and she based that based upon the memorandum by the, okay. He didn't disclose that when he told Larry Lane and Larry Lane wrote the memo. He did disclose it, but Larry Lane didn't write it down. It was not until... Does the record show whether there was any intimidation involved regarding Mr. Lane, why Mr. Lane elected to leave that name out of the memo? The only record we have is the affidavit from Mr. Lane that he did not reveal until he provided his affidavit in April to us of 2014, 2015, that that was the first time in that affidavit that he revealed that Sacchetti told him it was Alex Kovovarsich and Sacchetti who disabled the alarm system. Okay, well, what is the state of West Virginia law then? When you have a fraudulent concealment claim and the entity is known, consolidated coal is known as the entity who employed the wrongdoer, or at least arguably employed the wrongdoer, what about triggering the discovery rule at that point? Why wouldn't that be enough under West Virginia law? Or are you saying it's unresolved under West Virginia law and we should certify this to the West Virginia Supreme Court of Appeals? I am not, Judge Keenan. The issue is, though, was the person who disabled the fan someone who was in management or acting at the behest of management? Well, isn't your claim, your principal claim, the person, the entity with whom you wish to get the money consolidation? You know you have a claim against consolidation, or at least you think you do at the time you get this. You are hopeful that that person is going to be in management.  I'm not sure I understand why you wouldn't let that play out in discovery about who the person was that actually did this, hoping, and with a fair degree of confidence, hoping that it's going to be a consolidation employee of some sort so that consolidation will be liable. Okay. But, Your Honor, under the case of Rule 9B and U.S. X. Rel. Wilson v. Kellogg, Brown, and Root, we have to plead the name of the person in management who did the act in order to survive that standard, the standard of who, what, when, and where. You're saying as a matter of federal law you have to do that? Is that what you're saying? Yes, Your Honor. Under U.S. X. Rel. Wilson v. Brown and Root, I'm saying that this Court requires, the Fourth Circuit requires, that you name who, what, when, and where, and why in a fraudulent concealment case. Right. But are you confusing perhaps the requirements of fraud pleading with the triggering of the discovery rule? Aren't those two different things? Absolutely. I agree with you completely. And in this case, Your Honor, the fraudulent concealment, until we could plead that, we did not have a cause of action that we could bring before the Court. You're saying because your theory would be, what, you don't know whether this was a rogue actor? It could have been a consolidated coal employee, but it could have been somebody who did this without authorization or without direction? That would be correct. In 2008, when the memo surfaced, we would not have known who that person would have been, whether it was a saboteur, whether it was a low-level employee, whether it was a simple electrician, or whether it was someone acting under the- Okay, but does that answer the question, though, why at least your knowledge that it was consolidated didn't trigger the discovery rule for purposes of your investigating? That is correct, Your Honor, because I have to be able to show, under Rule 11, that I know who did this and that they were management, and therefore I can make the jump at that time to the consolidated coal company, and I would be able to do that. And in addition- Is consolidated, is there diversity here? Is that the basis of our jurisdiction? Yes, Your Honor, because we originally named someone else, and the State of West Virginia refused, all the way up to the Supreme Court, to allow us to reopen Mr. Coverbatch's estate. And because that estate was not allowed to be reopened, diversity existed between the consolidated coal company and the plaintiffs, and that's why Your Honors have. Had we been allowed to amend our complaint to include Cecchetti, that would have then destroyed diversity, and we would have been remanded back to State court. Yeah, I remember now. So getting back to the questions about fraud and the triggering, you have to be able to prove whether we're using the fraudulent concealment standard, or even if we wanted to use, as Judge Keeley did, the wrongful death statute- Well, but if you used-I'm sorry to interrupt you. No, of course not. On the wrongful death standard, then limitations would have run. Then your whole argument about how you can't plead because you could have pled an unknown person, you could have sued consolidated, right? Well, I could not, Your Honor, because in order to get around the statute of limitations on a wrongful death case based upon Miller v. Romero, I would have to demonstrate that there was actual evidence of fraud, misrepresentation, or concealment of material facts. What material facts was I aware that Consolidation Coal Company withheld from these families- Well, you have the report at this time. Pardon me? You have the report at this time. I have a report that says that when they re-energized the line, two years after this explosion, the electrician doing that re-energization thought the Femco-believed the Femco alarm had been jumped at the Mons Run. I had that. But what I didn't have was the piece that someone did that before the explosion that killed these men. I didn't have that piece of evidence to bring before Your Honors. And so as a result of that, I didn't have what I needed to prove the fraud that was committed way back when Mr. Kobovarchuk testified, and that's in the record here, in front of the mine inspectors. He was actually one of the people who testified, and he didn't reveal this, that he had done that before the explosion. Was that question asked of him? Does the record disclose that it was asked of him? That directly? I don't know, Your Honor. Well, then that's a problem for you, isn't it? The mere fact that it was disclosed doesn't mean that it's fraudulently concealed. Suppose the question wasn't asked. Well, Your Honor, fraud is the concealment of the truth. If you know what caused that mine to blow up, you have a duty to these families to tell them this is what caused the loss of life. What's the evidence that he knew how that's what caused it? How does this record prove that? You know, fraud has to be specifically planned, right? Right. What's the evidence that they knew that, the cause, that they knew that was the cause, that he knew at that time that was the cause? What was the evidence? What evidence do you have? Well, it was a methane gas explosion which blew the mine up. Right. We know that. And we know now that the fan was not running at the time, and we know that that would have prevented this. Right? Yes, that's the purpose of ventilation. And what question was asked of him we don't know. There's a transcript of his question. I know it, but I'm asking you, what do we know that he fraudulently, when asked, lied? What's the question and what was the lie? The question is... In the record, what was the question and what was the lie? Okay, generally speaking, the questions were what caused the mine... No, no, no, not generally speaking. What does the record say as to, because that's the specificity of pleading fraud. What was asked and what was the response that we now know was a lie? That's what I'm asking you. Yes, and, Your Honor, I can't answer your question. I didn't think so. That's a problem, isn't it? I don't think so, Your Honor, because we did ultimately discover exactly what happened and who the people were that caused it to happen. And now that's... That would go into the question of the wrongful death action. I'm talking about the fraudulent concealment, that element of it. How do you know it was... But I haven't been able to even discover any of that yet in this record. This is all 12b motions. I've not been allowed to do the necessary discovery. Don't you have to at least plead that when asked this question, they lied as to this fact? All you say is that he didn't disclose. Right, and what I'm saying to Chief Justice Gregory, what I'm saying is if you own a mine and you have a chief electrician who works for management and they know they did something that caused an explosion, they have an affirmative duty to reveal that as to what they did that caused this explosion. You're saying they don't have a right to withhold this information just because the most precise question that could have been asked wasn't asked. Correct, Your Honor. And what statutory authority is that? Pardon me? What's the statutory authority that gives that duty? What statute? You know, a duty is by what? Is it by statute, by contract, by public policy? What is it? Well, otherwise, you know, prospective defendants don't have to give prospective plaintiffs their whole case. Right? You know, you don't have to say, okay, let me tell you exactly how this happened. I'm going to tell you what I did wrong. I mean, that's what being sued and discovery is. What is the statutory requirement that gives the duty? The statutory requirement is the common law of West Virginia which says you can't hide the truth from someone to destroy their legal rights. Okay, is that by case or restatement of torts or what? Kessel v. Leavitt and Fraser v. Brewer, and yes, Kessel v. Leavitt does cite a restatement of torts. However, Your Honor, the case clearly holds. All those cases clearly hold, and many of them are discussed in Kessel. You can't withhold information in order to destroy another human being's legal rights when you had a duty to them, to their husbands and fathers, to protect them while they were underground. And you didn't do it, and so you just shut up about it. You can't do that under Kessel v. Leavitt. It's not allowed. Well, Kessel said that there's a cause of action for not just in the commercial context for fraudulent concealment, right? They extended it, enlarged the fraudulent concealment cause of action. That is correct. Beyond the commercial context. Yes. But West Virginia hasn't specifically recognized yet whether there is a cause of action for fraudulent concealment when the measure of damages is wrongful death. Isn't that correct? That is correct, Your Honor. The loss of a wrongful death action. So my question to you is why wouldn't we benefit from having the West Virginia Supreme Court of Appeals answer that question? Is there a cause of action in West Virginia for fraudulent concealment where the measure of damages is the loss of a wrongful death action? My time is up. I apologize. No, it's not. Go ahead. Jez Moss has a question, and Jez Keener has one now. Go ahead. I just was taught that I'm supposed to. You're absolutely correct, and I'm saying that you may proceed. The answer to your question, I believe, Judge Keenan, lies within the case of Kessel v. Levitt, wherein the court said, despite the lack of precedent recognizing a claim based in tort and sounding in fraud in circumstances fully analogous to this ruling, the instant appeal, this jurisprudence absent, does not alone foreclose our recognition of such a claim. Because it's been raised before, it doesn't mean you can't raise it, is what you're saying. And that's embodied in Kessel v. Levitt, which I believe is responsive to Your Honor's question. Thank you, Your Honors. Do you have a question? All right. Thank you. May it please the Court. My name is Henry Jernigan, and I'm appearing here today on behalf of Consolidation Coal Company, the Appellee. Judge Keenan, to answer the question you last posed, you're correct that the West Virginia Supreme Court has never extended the notion of a fraudulent concealment claim to situations where the predicate is wrongful death. Shouldn't we ask them that, whether there is a cause of action? It seems to me that rather than have us guess, it would make a lot of sense to, since it is West Virginia law, it's their common law, aren't they best suited to answer that? If that is the question, yes, Your Honor, I would agree that they are best suited. The point that I would make is, even if it does extend to a common law fraud of concealment, the statute of limitations, as Judge Keeley clearly held, has run. All of the facts necessary, and Mr. Siegel indicated that without the name of the particular individual, he could not make a claim for fraudulent concealment against Consol, not against Mr. Kovovarchik, and I apologize for my inability to articulate the name correctly, I'm sure, or anyone else. Is that assertion incorrect? I believe it is incorrect, Your Honor. If you look at their complaint, Mr. Siegel alleges some 10 to 12 separate claims of fraudulent concealment, only one of which relates to the identity of Mr. Kovovarchik. Yes, but his, I took his argument to be he couldn't file any claim against Consol, and he cited some case to us with which I was not familiar, but which I will get familiar with, in which he said that we held that because of the particularity and fraud requirements, that you had to know who actually committed the fraud within the organization. Your Honor, I think that once you look at that case, you'll find that he is vastly over-reading that case. So what do you think that case holds? I think the case holds that once you establish a duty on the part of Consol to operate the mine, and you establish that that duty was breached and injuries resulted from that, and that, as they allege, certain material facts relevant to that claim, assuming we can extend it to a wrongful death claim, occurred, that that is sufficient. But Mr. Jernigan and Mr. Siegel's response was, well, not really, because what if it's a rogue actor? Unless we know the identity, we don't know. We can't assert, we can't faithfully plead that this was done by an employee with knowledge, authority, and direction of management or someone in charge. Your Honor, once the duty to operate the mine in a safe and proper manner for the protection of the workers inside is established, if that standard is not met, if the fan safety system is bypassed or rendered inoperable, and the fan that ventilates the mine, and I should correct the record. I don't think there's anything in the record that shows that, in fact, a fan was not operating at the time of the explosion. The only thing we know for sure is that the mine, the fan safety system had been overridden so that if it stopped running, an alarm would sound. But that point aside. I'm sorry, they're also alleging that the safety chart was removed, aren't they, from the mine immediately after? They are. It's not a safety. Oh, I'm sorry. It's a chart which shows the cycling of the fan as I understand it now. Okay. I'm not a mine engineer, so. So get to the end of your sentence. I'm trying to remember where my sentence was, but. I was interested in the end, but go ahead. I think the point that I would make, Your Honor, is it really doesn't matter. If our duty was to run this mine in a safe and proper manner. But I think what you were doing, you were talking about the switch. All we know is that the switch that went over it. That is an important point. Ned, do you remember what you were talking about? You said we're not sure about the fan was running, but we know about the override switch. Yes, I think the question went to whether we had to specifically know the person that bypassed the system. And my point is, and I hate to be arguing basically what the plaintiffs could or would argue, is that we had a duty not to operate that mine unless all of our safety systems were, in fact, functioning. Well, that's what I would have thought, too. But I thought in response to my question, your colleague on the other side said, well, and this assumes for purposes here that this is correct, this is a fraudulent concealment claim, and so the standard is more specific than it would be in a regular cause of action. Because certainly if any other, you know, there are all kinds of causes of actions that are brought when you don't know who the guilty party is within the corporation or organization, and you bring him and you say, you just, you say that in your complaint and you get discovery. But it seemed to me your colleague was saying, well, but no, we're bringing this claim based in fraud, and therefore the pleading requirement requires more particularity. Generally, fraud claims do require more particularity. It does require more particularity, Your Honor, but it does not require that you plead every evidentiary matter that you intend to present. But isn't it a question of West Virginia law, though? Yes. As to whether a claim for fraudulent concealment requires identification of the actual wrongdoer as opposed to the entity sought to be held responsible. Isn't that a question of West Virginia law? As to that specific question, Your Honor, it would be certainly a question of West Virginia law. And if that was what was required to be pled, which we contend. Don't we need to know that? And it seems to me you're asking us to predict that West Virginia Supreme Court of Appeals would say knowledge of the entity is enough to trigger the discovery rule. And, again, it sort of comes back to my question. Why don't we ask them, they give us the answer, and then we decide the case? Well, I think it would be two questions, Your Honor. First, the question as you have posed it. And, secondly, whether that cause of action basically supersedes a claim arising under the wrongful death statute. So it's really two questions. I think the first question has largely been answered by this line of cases cited by Judge Keeley. But to go back to my point with respect to Rule 9, Rule 9 simply requires that the circumstances constituting the fraud be pled in a manner sufficient to provide defendant with reasonable notice of the nature of the claims against them. And that comes from a West Virginia Supreme Court case, Pocahontas v. OxyUSA. Now, in this situation, they have alleged, by my count, ten instances of wrongful concealment. They have alleged then one final concealment, and that is that Mr. Kovarvarchik was the person who rendered the mine safety system inoperable. With all due respect, Judge Keenan, I do not believe that West Virginia law or the law of any jurisdiction would require, in this situation, in order to state a claim for fraudulent concealment, every act of concealment be pled or that this particular name be pled. In essence, what we have here, and we believe it would render a statute of limitations meaningless, to say you can go out and search for additional facts in support of your claim for fraudulent concealment, and each time you find one of those facts, it resets the running of the statute of limitations. In this case, as Judge Keeley clearly stated, and we think she was absolutely correct, the statute of limitations began to run when they had sufficient facts in their possession to allow them to make a claim for fraudulent concealment or wrongful death. And if you look at the complaint, there are 39 factual allegations that they make as to what they knew and what they didn't know with respect to their claims. Only one, and that is in paragraph 40, did they learn after 2008. They had everything else in 2008. We believe that Judge Keeley was correct in her conclusion that the statute of their case had accrued no later than 2008, and therefore the statute of limitations ran at that point. Well, even if the statute of limitations didn't run, don't they have a problem with tolling? I mean, this took place way back in the day, so even if it was timely, could it have tolled the action against the injury that took place way back in the day, and I understand there were subsequent lawsuits? Their cause of action, as we understand their tort claim or fraud claim, would arise or mature when they learned all of the facts necessary to state a claim for fraudulent concealment. So you don't make any tolling claim, is that what you're saying? I'm not. Well, the tolling would apply to the West Virginia wrongful death statute. Well, that's where they have their money, on the wrongful death statute. I understand that, and certainly it was Judge Keeley's position, and we believe she's absolutely correct based upon the law, that in 1968, when these deaths occurred, the statute required that those claims be brought within two years of that death, and that was an inflexible time and was not subject to being tolled or otherwise extended. Now, subsequent to that, some 20 to 30 years later, the West Virginia Supreme Court revisited those issues and applied them. But have they ever retroactively applied them? They have not, and even if they did, Your Honor, under West Virginia law, the retroactivity would only apply to cases pending at that time. Well, of course, pending at what time? I interrupted you. At the time the decision was handed down. At what decision was handed down? That would be the – Bradshaw? I'm sorry? Are you talking about Bradshaw? Bradshaw, and then the case prior to that, which I believe – Well, what if they – what if we certified this? Then this case would be pending at the time. It wouldn't have been pending in 2001. No, but they could – if they decided to make a retroactivity rule, they could make it – Well, if they decide to do that, Your Honor, then yes. You're thinking it would open up a whole can of worms, a whole bunch of other cases, as you're saying, that have happened. Would every litigant who had a wrongful death claim back to when be able to revive those claims on the basis that retroactively – No, on the basis of fraudulent concealment. Well, I don't – The fact that information was wrongfully upheld, it would be a small subset of wrongful death claimants, wouldn't it? There are two bases for tolling that the plaintiffs have relied upon. One is fraudulent concealment and one is discovery, the discovery rule. The discovery rule. So that, you know, it would open a can of – I don't know that one would call them worms, but it certainly would make for some interesting litigation in West Virginia going forward. So would it be a fair statement, then, Mr. Jernigan, of your position that their best case is fraudulent concealment, not wrongful death, that they were put on sufficient notice in 2008 and that their duty to discover further facts was triggered at that point and so their claim ran in 2010? Yes, Your Honor, and one other point that I would make with respect to that. If, in fact, it was critical to allege that it was an employee or an individual, this Court has said, and the West Virginia authorities concur with this, if a real person – excuse me for just a moment – if you do not know the name of a real person, but that name is likely to be discovered, and certainly in this case, given Mr. Lane's statements, it would have been discovered. His deposition would have been taken. You can substitute a John Doe. Well, that's what I thought, but the response from your colleague was you can't do that when you have fraud. Your Honor, I – Or an allegation of fraud. I – that is – that carries Rule 9 farther than I think any court has. I have not seen any authority which supports that. Well, he came up with assertively some Fourth Circuit case that said that. Well, and I – you know, we can – Generally, we follow those. I understand that, Your Honor, and the Fourth Circuit also has said precisely what I just quoted back to you, that where the – you know a person. You know a person in management or you know an employee is likely to have been. Well, of course, he maintains that he don't know from the report that it is a person in management or even an employee of Consolidation. You just know it's someone. But you reasonably know, Your Honor, that it's either management or an employee. Rogue individuals rarely, if ever, during an operating shift,  that just does not happen. So it's reasonable under Rule 11 or under Rule 9 in this case. Is this a question of state or federal law? Since this is a case in diversity, I believe it would be a question of state law, but I stand to be corrected if that is inaccurate. One other thing that I wanted to mention, because Mr. Siegel started out, and I don't believe that it is sustainable here, suggesting that statute of limitations should not be applied if it is not in the interest of justice. And this court in its in-bank decision in First Bank and is cited in the appellant's reply brief in support of that concept, specifically said that statute of limitations are not mere technicalities. Rather, they have a long and respected role as fundamental to the well-ordered justice system. This court acknowledged that there's a tension between the goals of statute of limitations and the ends of justice. And certainly, the plaintiffs in this case, as plaintiffs in other cases who find their claims barred by the statute of limitations, may feel that is unfair. But our legislature, in weighing the tensions between those two goals, in these cases has said, two years is the period once your action accrues within which your claim must be filed. That did not happen here. And for that reason, the claims are barred. Okay, but still you have the discovery rule coming into play under West Virginia law. And your exposition of the law just then ignores the operation of the discovery rule, does it not? I don't believe so, Your Honor, because the operative question is when did the cause of action arrive? And then it comes back to the question, did they need to know the identity of the wrongdoer? Yes, Your Honor. Unless the court has any further questions, I believe that we stand on our briefs as well as Judge Keeley's extensive decision. Thank you, Your Honor. Thank you, Mr. Chairman. Mr. Siegel? Yes, Your Honor. Thank you. May it please the Court, Judge Motz, United States X. Rel. Wilson v. Kellogg, Brown and Root decided by the Fourth Circuit May 16, 2008, wherein the Court held, we finally agree with the District Court that Realtor's Third Amendment complaint does not plead fraud with the particularity required by Federal Rules of Civil Procedure 9b. To meet this standard, an FCA plaintiff must, at a minimum, describe the time, place, and contents of the false representation as well as the identity of the person making the misrepresentation and what he obtained thereby, citing the Harrison case, and then adding, these facts are often referred to as the who, what, when, where, and how of the alleged fraud. Mr. Siegel? Yes, Your Honor. Does that case involve the situation that we have here where you have a possible agent of a wrongdoer and the wrongdoer itself? In other words, were there the two? Because you have your principal defendant here, undoubtedly, as consolidation. Yes, Your Honor. And so that case involved the same situation. I will read the case for sure, but you obviously are intimately familiar with it. And so it also involved a corporation or other entity, and that person was known and that was pled against that person, but there was another person who worked for or was an agent of the first defendant. Yes, Your Honor. That involves the same situation. Okay. Yes. Now, it was a different type of claim. I mean, it was the federal government saying, you did something bad under our contract to build something for us. But, yes, the analysis is, as you pointed out, Judge Motz, and it cites other cases that hold that as well. Fine. I just didn't want to, because, you know, sometimes, not with you, I'm sure, but sometimes in oral argument we get a representation, then you go back and read the case, and it isn't quite what I had thought from the representation of the lawyer. But I take your point. You don't have to spend any more time with me on that. I'm sorry. Mr. Siegel, have you answered Judge Motz? Yes. Okay. I'm concerned with the fact that it seems to me that you are blending the discovery rule in West Virginia with the federal fraud pleading requirements. Don't we have a question in front of us, whether the discovery rule is triggered when you know the entity, the discovery rule in West Virginia, not federal pleading requirements. Is that triggered when you know the identity of consolidation coal, but not the identity of the individual wrongdoer?  And it seems to me that you're just rushing into the fraud pleading requirements, but before you can have any relief under that, you've got to cross over the hurdle whether the discovery rule was triggered when you knew consolidation, an agent of consolidation may have done this, or were you entitled to rely on the discovery rule not being triggered as a matter of West Virginia law, because you did not know the identity of the particular wrongdoer? Do you see what I'm saying? Yes, Judge Keenan. And let me make sure because. Address that. Yes, Judge Keenan. And I think I disagree slightly with Mr. Jernigan here. We have to prove that the person who did the act was being supervised by or instructed by consolidated coal. I'm talking about triggering the discovery rule, not your pleading requirement. I am, too, because I can't legally sue them unless it was someone in management that performed the act. So you're saying the discovery rule is not triggered. Because an employee. What West Virginia law do we have that we can rely on for your proposition that the discovery rule was not triggered by knowledge of consolidation as opposed to knowledge of the individual? Because they had a duty to disclose at the time they discovered what happened to these families. They have, in answer to Judge Gregory's question, the word is a fiduciary relationship. When you send these men underground, you have a duty to their families and to them to protect them. I understand what you're saying there. I guess what maybe I'm trying to see, again, getting back to the point that we've got a question of West Virginia law, don't we, on when the discovery rule is triggered. And I believe that question has been answered. By which case? Kessel v. Levitt and the cases. Kessel just says that discovery doesn't apply only to the commercial context, that it applies to torts. Kessel doesn't say when the discovery rule is triggered, unless you can point me to any part of the Kessel text. And this comes back to my point. I guess I don't understand why you don't want us to send this to the West Virginia Supreme Court to get their reading on West Virginia law before we decide this case so we don't make a mistake trying to predict. That's what I'm concerned about. I agree with you. This is a very, very serious issue. And why do you want us to guess rather than to get an answer from the West Virginia court? May I answer, Your Honor? I don't want you to guess. And if you feel that way, I understand. I just think the law that we've cited within our briefs is sufficient to allow you not to guess but to answer the question. I believe that's the case, Your Honor. May I ask you a question? Yes, sir. If under the discovery, Mr. Jernigan says that only one count really delineates when you knew when you got the memo. The others show way before 2008 that you were on notice. Do you think under the discovery, just looking at the discovery aspect, when you should have gone forward, if you had enough information that an employee of Consolidated was involved but not knowing who it was, do you think there the discovery rule would say you then, the clock started? No, because they were not a member of management and they were not told to do it by management. No, no, no. I'm saying that you had information that whomever it was, was employed by Consolidated. In other words, someone hid something. I don't know exactly what it was, but I know that that person had to be a Consolidated employee. Do you think that would trigger the discovery rule? No, Your Honor. So you'd have to know name, rank, and serial number? Yes, Your Honor. Your authority for that position is? Because you're suing the company for doing something that hurt these folks. You know, under Judge Gregory's hypothetical, you know it's somebody at the company. But I don't know if they're someone who is in, in other words, if an employee just does something and they're not being told to do it, supervised in doing it, or abetted in doing it, then how do I make the company liable? That's when you say about good faith and belief that a person who's employed and under their control did something. And then that's for discovery and suing. The discovery rule doesn't say you've got to have everything lock, stock, and barrel for all of your pleas, but enough that you should be able to go forward, right? Correct. But under 9B, I have a duty to say more than just that. And I had to comply with that duty as well. Well, you know, Mr. Steele, I think you very successfully represent a lot of plaintiffs. And this is an odd argument for you to make because I bet more often than not you're filing complaints in which the other side is saying, you know, it's not sufficient or there's some problem with it. And here you're saying there would be a problem with filing the complaint then. I mean, usually one of the things that we get recurringly is whether the complaint is sufficient, whether it has stated a cause of action about something or other. And, you know, the federal rules talk about liberal interpretations. And I hear all your arguments, but I'm just not sure. I would have thought you would have embraced the idea that these are all But you don't, right? I do embrace that. You now embrace it. No, no. I embrace it. I'm just saying. Well, remember, you know, I have a recording here and I can go back about 40 minutes ago when Judge Keenan first raised the question. He didn't embrace it then. And because, Your Honor, I believe that the Kessel case and the briefing that we have provided provides the guidance to answer that question. If, however, the court is uncomfortable with that, obviously it's fine if that's the way the court wants to go. I was just saying I think the briefing and Kessel covers it. Thank you all. I appreciate your time. Oh, no, no. Thank you so much. We'll come down. No, it's fine. We'll come down, Greek House, and proceed.
judges: Roger L. Gregory, Diana Gribbon Motz, Barbara Milano Keenan